IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| LINDA MARSHALL-DOOLEY, | ) |
| | ) |
| Plaintiff, | )   CASE NO. 18-cv-1947 |
| | ) |
| v. | )   JURY TRIAL DEMANDED |
| | ) |
| SCHENKER, INC., | ) |
| d/b/a D.B. SCHENKER | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Linda Marshall-Dooley, for her Complaint against Defendant DB Schenker, Inc.., d/b/a D.B. Schenker, states as follows:

### The Parties

1. Plaintiff Linda Dooley is a citizen of the State of Missouri, residing in St. Louis, Missouri.

2. Defendant DB Schenker, Inc. ("DB Schenker" or "Defendant") has its principal place of business in Virginia at 1305 Executive Boulevard St. 200, Chesapeake, VA 23320 and its Missouri registered agent's office at 120 South Central Ave., Clayton, MO 63105.

### Nature of the Action

3. This action relates to the dangerous working conditions for hundreds of DB Schenker employees across St. Louis and, potentially, the United States.

4. Since Plaintiff was hired, she was subjected to numerous Occupational Safety and Health Act violations, causing significant injuries to herself and many other former colleagues.

5. Plaintiff brings this action pursuant to the Missouri Human Rights Act ("MHRA"); and

Missouri common law, to remedy the illegal and discriminatory adverse employment actions taken by Defendant against Plaintiff in which Defendant created, maintained, and subjected Plaintiff to an unsafe, hostile, and discriminatory work environment, wherein which she was intimidated and discriminated against by several of Defendant's agents, including Plaintiff's direct and indirect supervisors.  In addition, Plaintiff was discriminated against for her sex, and ultimately was terminated from her employment because of her sex.

## Jurisdiction and Venue

6. This Court has original, federal question jurisdiction over Plaintiff's Occupational Safety and Health Act, 29 29 U.S.C. §§ 651–678 (1994) claims. The Court has supplemental jurisdiction over Plaintiff's common law and MHRA claims pursuant to 28 U.S.C. § 1367(a).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims occurred in this judicial district. In addition, Plaintiff and Defendant are located in this judicial district.

8. Plaintiff brings her federal and state statutory claims on a timely basis pursuant to the procedural requirements of the MHRA claims in that on August 22, 2018, the MHRA issued to Plaintiff its Notice of Right to Sue (the "Notice"), permitting Plaintiff to file a civil action based on the grievances Plaintiff raised in her charge, E-02/18-49150 28E-2018-00596C. A copy of this notice is attached hereto as **Exhibit A**.

## Plaintiff's Initial Notice of Dangerous Work Conditions

9. Plaintiff was hired in the Summer of 2017.

10. Upon her hire at DB Schenker, Plaintiff noticed how dangerous the racks and pallets were.

11. Namely, thousands of pounds of product sat twenty to thirty feet above employees' heads with

2

limited, or any, protective guards.

12. After experiencing an injury herself in which a case of hot sauce fell down on Plaintiff and the glass from the bottles shattered over her, Plaintiff requested a promotion to clean the racks in order to make them more safe.

13. Along with only one other employee - who could not perform this job alone - she was the only person experienced, certified, and qualified to perform the work involved in the promotion she proposed.

14. However, four male employees were promoted to this position instead of her, despite their lack of qualification and training in the position.

15. Two of the four male employees who were promoted received a substantial raise for working this position.

16. Nevertheless, Plaintiff still continually communicated how dangerous the racks were.

17. In one instance of many, on October 9, 2017, Plaintiff explained to a Human Resources Representative the dangers of the rack system.

18. A roundtable discussion was instituted to see what could be done because, right around that same time period, a case had fallen down and knocked out an employee's teeth.

19. Nothing significant, if anything at all, was done about the dangerous rack system.

20. Regardless, Plaintiff continued to ask for a promotion in order to do what she could to increase the limited safety of the racking system, even until January 2018.

21. She was denied this promotion every time she asked.

### Plaintiff Again Reports a Dangerous Work Condition

22. On February 20, 2018, Plaintiff arrived to work at 5:55 a.m.

23. Plaintiff informed her supervisor that she had a personal appointment and would be leaving work at around noon that day.

24. To this, Plaintiff's supervisor asked if she would like to use her sick time so that she could still be paid.

25. Plaintiff agreed to this offer.

26. That day, during the safety meeting that Plaintiff had every morning, Plaintiff was informed that there were 26 "push throughs," or a pallet of cases which weigh between 500 and 1,500 pounds. To this, Plaintiff had an idea:

   a. In the aisles of the warehouse, "case pickers" go from rack to rack to pick products for customer orders.
   b. However, in the aisles in which these "case pickers" work, nothing stopped pallets from falling on employees from as high as 20 to 30 feet above the "case pickers."
   c. In the double-aisles, though, there is safety guarding to avoid an accident with "push throughs."
   d. Thus, Plaintiff suggested that the "case pickers" pick from *double*-aisles rather than the *single*-aisles, in order to avoid accident.

27. Plaintiff's supervisor essentially ignored this idea, merely suggesting that employees should just be "more careful."

28. Another employee, however, made the comment that the racks - which held thousands of pounds of product from 20 to 30 feet up - were installed in a rush and improperly.  Since installation, the safety issue had not been adequately corrected, if corrected at all.

29. Plaintiff's supervisor said that a safer installation would happen but would "take a while."

30. Plaintiff responded asking if it was really true that they worked for a million dollar company but the company "would rather kill innocent employees than have case pickers in double-aisles instead of

4

single?"

31. Plaintiff's supervisor ignored the question, and asked of the other employees if there were any more questions; everyone went to work after no one asked further questions.

32. As later events illustrate, Defendant decided then to retaliate against Plaintiff for raising such questions.

### Defendant Lies About Plaintiff Running Over a Shrink-wrap Machine

33. Later that same day, February 20, 2018, at approximately 11:55 a.m., Plaintiff's supervisor informed Plaintiff that she was reported for driving over a shrink wrap machine.

34. Plaintiff responded that it was not possible for her to drive over a shrink wrap machine; she explained that her truck would tilt over first and the operator of this truck would definitely know if there was a problem.

35. Other employees were around Plaintiff as she completed her shift and verified that it was false that she drove over a shrink-wrapping machine.

### Plaintiff Is Unreasonably Asked to Take a Drug Test and Is Terminated After Agreeing to Do So

36. At approximately 12:10 p.m. that same day, Plaintiff was then asked to come to the front office for a drug test, to which Plaintiff agreed.

37. Plaintiff again informed her supervisor that she should have already left for her appointment but, assuming the process would be quick, agreed to work the drug test into her schedule.

38. However, Plaintiff's supervisor asked Plaintiff to get in a cab and take the drug test off-site.

39. Plaintiff said that she could take the drug test paperwork with her and take the test immediately after her appointment.

40. Plaintiff's supervisor refused.

41. Plaintiff said that she could take the drug test the following day.

42. Plaintiff's supervisor again refused and said that he would commence an "investigation.".

43. The following day, Plaintiff was terminated from her job allegedly for "failing to take a drug test," despite that Plaintiff agreed - multiple times - to do so.

### COUNT I: SEX DISCRIMINATION IN VIOLATION OF TITLE VII AND THE MISSOURI HUMAN RIGHTS ACT

44. Plaintiff incorporates all preceding paragraphs as if set forth herein.

45. At the time of Plaintiff's discharge from employment, Plaintiff had more seniority and more qualification than various male employees that Defendant promoted.

46. The Plaintiff's sex (female) was a substantial factor, if not the motivating factor, in Defendant's decision to deny promotion to Plaintiff and terminate Plaintiff, in violation of Title VII of the Civil Rights Act of 1964, and the Missouri Human Rights Act, §213.055.1 RSMo.

47. At all times pertinent to this matter, Defendant employed over 6 individuals for 20 calendar weeks preceding this violation. Accordingly, Defendant constitutes an "employer" under the MHRA.

48. As a result of Defendant's unlawful discriminatory conduct towards the Plaintiff as aforesaid, Plaintiff has and will continue to sustain damages in the form of lost wages and benefits of employment.

49. As a result of Defendant's unlawful and discriminatory conduct and actions as aforesaid, Plaintiff has suffered emotional distress and mental anguish.

50. Defendant's conduct as aforesaid was outrageous and the result of evil motive or reckless indifference to the rights of Plaintiff, thus entitling her to an award of punitive damages against

Defendant to deter Defendant and others from engaging in future similar conduct.

WHEREFORE, Plaintiff requests that this Court enter its judgment in favor of Plaintiff and against the Defendant as follows:

    a. that Plaintiff have and recover compensatory damages for past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

    b. that Plaintiff have and recover her reasonable attorney fees pursuant to MHRA provisions; and

    c. that the Court award Plaintiff such other and further relief as the Court deems just and necessary in order to make Plaintiff whole.

## COUNT II: RETALIATORY DISCHARGE IN VIOLATION OF TITLE VII AND THE MISSOURI HUMAN RIGHTS ACT

51. Plaintiff incorporates all preceding paragraphs as if set forth herein.

52. At the time of Plaintiff's discharge from employment, Plaintiff had a great working record.

53. Plaintiff was discharged immediately after raising serious concerns about the safety conditions at the workplace.

54. Plaintiff was, in fact, discharged because of, *inter alia,* raising concerns about the safety of the workplace.

55. The Plaintiff's reporting and questioning of the safety conditions at the workplace was a substantial factor, if not the sole factor, in Defendant's decision to terminate Plaintiff, in violation of Title VII of the Civil Rights Act of 1964, and the Missouri Human Rights Act, §213.055.1 RSMo.

56. At all times pertinent to this matter, Defendant employed over 6 individuals for 20 calendar

weeks preceding this violation.  Accordingly, Defendant constitutes an "employer" under the MHRA.

57. As a result of Defendant's unlawful and illegal retaliation against the Plaintiff as aforesaid, Plaintiff has and will continue to sustain damages in the form of lost wages and benefits of employment.

58. As a result of Defendant's unlawful and illegal retaliation against the Plaintiff as aforesaid, Plaintiff has suffered emotional distress and mental anguish.

59. Defendant's conduct as aforesaid was outrageous and the result of evil motive or reckless indifference to the rights of Plaintiff, thus entitling her to an award of punitive damages against Defendant to deter Defendant and others from engaging in future similar conduct.

WHEREFORE, Plaintiff requests that this Court enter its judgment in favor of Plaintiff and against the Defendant as follows:

   d. that Plaintiff have and recover compensatory damages for past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

   e. that Plaintiff have and recover her reasonable attorney fees pursuant to MHRA provisions; and

   f. that the Court award Plaintiff such other and further relief as the Court deems just and necessary in order to make Plaintiff whole.

### COUNT III: WILLFUL VIOLATION OF THE OCCUPATIONAL SAFETY AND HEALTH ACT, 29 U.S.C. §§ 651–678 (1994)

60. Plaintiff incorporates all preceding paragraphs as if set forth herein.

61. Defendant provided an unsafe work environment by, *inter alia*, failing to immediately provide

protection to employees from falling product and otherwise simply addressing the issue by warning employees to be "more careful" and/or instructing them how to avoid falling product and other hazards, all in violation of the occupational safety and health standards of the Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. §§ 651–678 (1994)

62. As a direct and proximate result of Defendant and its agents, Plaintiff has sustained damages in the form of physical and emotional damages.

63. Defendant's conduct was outrageous due to its agents' reckless disregard for Plaintiff's rights, entitling her to punitive damages.

WHEREFORE, Plaintiff requests that this Court enter its judgment in favor of Plaintiff and against the Defendant as follows:

  a. that Plaintiff have and recover compensatory damages for past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

  b. that Plaintiff have and recover her reasonable attorney fees pursuant to OSHA provisions; and

  c. that the Court award Plaintiff such other and further relief as the Court deems just and necessary in order to make Plaintiff whole.

### COUNT IV: GENERAL NEGLIGENCE

64. Plaintiff incorporates all preceding paragraphs as if set forth herein.

65. Pursuant to the facts set forth herein, Defendant had a duty to exercise reasonable diligence in creating a safe and secure workplace, free from hazards such as those described herein.

66. Defendant negligently breached that duty in many, if not all, of the manners set forth above.

67. As a direct and proximate result of said negligence, Plaintiff has suffered physical, emotional, and monetary damages.

WHEREFORE, Plaintiff requests that this Court enter its judgment in favor of Plaintiff and against the Defendant as follows:

a. that Plaintiff have and recover compensatory damages for past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

b. that the Court award Plaintiff such other and further relief as the Court deems just and necessary in order to make Plaintiff whole.

Respectfully submitted,

**DANIEL F. HARVATH, ESQ.**

By: /s/ *Daniel F. Harvath*
Daniel F. Harvath, #57599MO
**HARVATH LAW GROUP, LLC**
75 W. Lockwood, Webster Groves, MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com
*Attorney for Plaintiff*