# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **LINDA MARSHALL-DOOLEY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 14CV1947 HEA |
| ) | |
| **SCHENKER, INC., d/b/a D.B. SCHENKER,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint, [Doc. No. 3]. Plaintiff opposes the motion. In her opposition to the Motion, Plaintiff concedes that Counts II, III and IV should be dismissed. On April 24, 2019, the Court heard oral argument. At the hearing, Plaintiff conceded that portions of Count I should be dismissed as well. Plaintiff announced to the Court that the sole claim Plaintiff is pursuing is that she was discriminated against under Title VII based on her sex for Defendant's failure to promote her. For the reasons set forth below, the Motion will be granted.

Plaintiff filed suit against her former employer alleging that she was discriminated against based on her sex by Defendant's failure to promote her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.

## Facts and Background

Plaintiff's Amended Complaint alleges the following with respect to the failure to promote:

Plaintiff was hired in the summer of 2017. Upon her hire at DB Schenker, Plaintiff noticed how dangerous the racks and pallets were. Namely, thousands of pounds of product sat twenty to thirty feet above employees' heads with limited, or no, protective guards. After experiencing an injury herself in which a case of hot sauce fell down on Plaintiff and the glass from the bottles shattered over her, Plaintiff requested a promotion to clean the racks in order to make them more safe. Along with only one other employee - who could not perform this job alone - she was the only person experienced, certified, and qualified to perform the work involved in the promotion she proposed. However, four male employees were promoted to this position instead of her, despite their lack of qualification and training in the position. Two of the four male employees who were promoted received a substantial raise for working this position.

Nevertheless, Plaintiff still continually communicated how dangerous the racks were. In one instance of many, on October 9, 2017, Plaintiff explained to a Human Resources Representative the dangers of the rack system. A roundtable discussion was instituted to see what could be done because, right around that

same time period, a case had fallen down and knocked out an employee's teeth. Nothing significant, if anything at all, was done about the dangerous rack system. Plaintiff continued to ask for a promotion in order to do what she could to increase the limited safety of the racking system, even until January 2018. She was denied this promotion every time she asked.

On February 20, 2018, Plaintiff arrived to work at 5:55 a.m. Plaintiff informed her supervisor that she had a personal appointment and would be leaving work at around noon that day. To this, Plaintiff's supervisor asked if she would like to use her sick time so that she could still be paid. Plaintiff agreed to this offer. That day, during the safety meeting that Plaintiff had every morning, Plaintiff was informed that there were 26 "push throughs," or a pallet of cases which weigh between 500 and 1,500 pounds. To this, Plaintiff had an idea: a. In the aisles of the warehouse, "case pickers" go from rack to rack to pick products for customer orders; b. however, in the aisles in which these "case pickers" work, nothing stopped pallets from falling on employees from as high as 20 to 30 feet above the "case pickers;" c. in the double-aisles, though, there is safety guarding to avoid an accident with "push throughs;" d. thus, Plaintiff suggested that the "case pickers" pick from *double*-aisles rather than the *single*-aisles, in order to avoid accident. Plaintiff's supervisor essentially ignored this idea, merely suggesting that employees should just be "more careful." Another employee, however, made the

comment that the racks - which held thousands of pounds of product from 20 to 30 feet up - were installed in a rush and improperly. Since installation, the safety issue had not been adequately corrected, if corrected at all. Plaintiff's supervisor said that a safer installation would happen but would "take a while." Plaintiff responded asking if it was really true that they worked for a million dollar company but the company "would rather kill innocent employees than have case pickers in double-aisles instead of single?" Plaintiff's supervisor ignored the question, and asked of the other employees if there were any more questions; everyone went to work after no one asked further questions.

    As later events illustrate, Defendant decided then to retaliate against Plaintiff for raising such questions. Later that same day, February 20, 2018, at approximately 11:55 a.m., Plaintiff's supervisor informed Plaintiff that she was reported for driving over a shrink wrap machine. Plaintiff responded that it was not possible for her to drive over a shrink wrap machine; she explained that her truck would tilt over first and the operator of this truck would definitely know if there was a problem. Other employees were around Plaintiff as she completed her shift and verified that it was false that she drove over a shrink-wrapping machine. At approximately 12:10 p.m. that same day, Plaintiff was then asked to come to the front office for a drug test, to which Plaintiff agreed. Plaintiff again informed her supervisor that she should have already left for her appointment but, assuming the

process would be quick, agreed to work the drug test into her schedule. However, Plaintiff's supervisor asked Plaintiff to get in a cab and take the drug test off-site. Plaintiff said that she could take the drug test paperwork with her and take the test immediately after her appointment. Plaintiff's supervisor refused. Plaintiff said that she could take the drug test the following day. Plaintiff's supervisor again refused and said that he would commence an "investigation."

The following day, Plaintiff was terminated from her job allegedly for "failing to take a drug test," despite that Plaintiff agreed - multiple times - to do so. At the time of Plaintiff's discharge from employment, Plaintiff had more seniority and more qualification than various male employees that Defendant promoted. The Plaintiff's sex (female) was a substantial factor, if not the motivating factor, in Defendant's decision to deny promotion to Plaintiff and terminate Plaintiff, in violation of Title VII of the Civil Rights Act of 1964.

## Discussion

### Motion to Dismiss Standard

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 570

(2007)). A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8h Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 526 (quoted case omitted). This standard "simply calls for enough facts to raise reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id.* at 556.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable" *id.*, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id.* at 555-56. The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678-79 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although legal conclusions can provide the

framework for a complaint, they must be supported by factual allegations. *Id.* at 679. Plausibility is assessed by considering only the materials that are "necessarily embraced by the pleadings and exhibits attached to the complaint[.]" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoted case omitted). The plausibility of the plaintiff's claim is reviewed "as a whole, not plausibility of each individual allegation." *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010).

Defendant takes issue with Plaintiff's claim that her sex was "a substantial factor, if not the motivating factor" in the denial of promotions. The Court agrees that the applicable test is whether Plaintiff's sex was the motivating factor in the denial of promotions. While the wording of the allegation is subject to varying interpretations, *i.e.*, the allegation can be read as a substantial factor being secondary to the motivating factor, or the allegation can be read as if sex was not the motivating factor, it was a substantial factor, construing the pleadings in the light most favorable to Plaintiff, it cannot be definitively concluded that Plaintiff has not alleged that her sex was the motivating factor in the denial of promotions.

The more significant failure of the Complaint, however, is Plaintiff's failure to include sufficient facts to set forth a plausible claim. Plaintiff merely states that she was denied "promotions." Nowhere does Plaintiff indicate what jobs to which she applied and was denied. Nor does Plaintiff set out sufficient facts of male

7

employees being promoted to positions to which Plaintiff applied and was denied the promotion. Plaintiff's vague references to promotions and "four male employees who were less qualified and had less training" do not provide enough factual information for Defendant to respond.

To establish a *prima facie* claim for discrimination based on sex, the Plaintiff must prove that: (1) she was a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) there are facts that give rise to an inference of unlawful gender discrimination. *Fiero v. CSG Systems, Inc.*, 759 F.3d 874, 878 (8th Cir. 2014)(citing *Wells v. SCI Mgmt, L.P.*, 469 F.3d 697, 700 (8th Cir. 2006).

The insufficiency of Plaintiff's Complaint rings loudly with a lack of articulation of the positions she sought and that she was qualified for those positions. Moreover, Plaintiff fails to set out any facts to show the males that were allegedly promoted were similarly situated to Plaintiff. To raise an inference of unlawful gender discrimination, the Plaintiff must show that she was treated differently from similarly situated male employees. *See*, *Bearden v. International Paper Co.*, 529 F.3d 828 (8th Cir. 2008)(citing *Wells*, 469 F.3d at 701).

## Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss Plaintiff's Complaint is well taken.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, [Doc. No. 3], is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is **Dismissed**.

**IT IS FURTHER ORDERED** that Plaintiff is granted 14 days from the date of this Opinion, Memorandum and Order to file an Amended Complaint with respect to her failure to promote sex discrimination claim.

Dated this 16th day of May, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE